UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVID L. CROW,                                    :
            Plaintiff,                            :
                                                  :
      v.                                          :        C.A. No. 13-225PAS
                                                  :
CAROLYN W. COLVIN, ACTING                         :
COMMISSIONER OF SOCIAL SECURITY,                  :
            Defendant.                            :

**MEMORANDUM AND ORDER**

*Pro se* Plaintiff David L. Crow claims that he has been disabled for eight years as a result

of a heart attack suffered when he was only forty-four years old, which was closely followed by

a bleeding ulcer linked to medication prescribed to prevent further heart issues. This matter is

before the Court on his motion for reversal of the decision of the Commissioner of Social

Security (the "Commissioner"), denying Supplemental Security Income ("SSI") under §

1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3) (the "Act").

Plaintiff was represented by counsel throughout the administrative process below, but is

proceeding *pro se* before this Court. He contends that the decision of the Administrative Law

Judge ("ALJ") was infected by errors of law and not supported by substantial evidence.

Specifically, Plaintiff argues that the ALJ failed adequately to consider the side effects of his

medications and the pain in his knees and back, inappropriately focused on his alcohol intake and

failure to file tax returns and failed to consult a medical expert at the administrative hearing.

Based on these arguments, he now seeks to reverse the decision of the Commissioner. The

Acting Commissioner, Carolyn W. Colvin, has filed a motion for an order affirming her decision.

With the parties' consent, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Because I find that the decision of the Commissioner that Plaintiff is not disabled is legally correct and well supported by substantial evidence, I order that Plaintiff's Motion for Reversal (ECF No. 16) be DENIED and the Commissioner's Motion for Order Affirming the Decision of the Commissioner (ECF No. 17) be GRANTED.

## I.    Background Facts

Plaintiff was born in 1961; he was forty-four on December 9, 2005, which is the date both of his heart attack and the alleged onset of disability. Tr. 108, 249. After completing high school and attending one year of college, Tr. 134, he served in the Army on a gunnery crew in a non-combatant setting. Tr. 33, 398. The record does not reveal when he was discharged from the Army or what work he did after the Army until 1994. From 1994 until the heart attack in 2005, he claims to have worked continuously and full-time as a self-employed carpenter. Tr. 130. Since December 2005, he reports that he has not worked. Tr. 129. He lives with his mother, who supports him financially, while he assists in caring for her. Tr. 33, 37, 138.

Plaintiff's reported earnings after 1994 are largely inconsistent with his averment in his application that he worked full-time as a self-employed carpenter until the heart attack. Records show reported annual income for the prior period, from 1980 (the first date for which records were requested) through 1991, of between $597 and $12,201.16. Tr. 117. However, from 1992 through 2001 and from 2003 through 2005, he had no reported income whatsoever; anomalously, in one year over this thirteen year period (2002), he reported that he earned $20,028. Id. When the ALJ questioned him about this inconsistency, Plaintiff testified that, despite his self-

employed status, he had been advised by the Internal Revenue Service ("IRS"), "[d]on't bother filing anymore if you don't make enough to file." Tr. 34-35.

Plaintiff's 2005 heart attack was serious. It was treated with angioplasty and stent placement, as well as medication, including the blood thinner, Plavix. With this treatment, by July 2006, Plaintiff was generally doing well and not experiencing any symptoms of angina. Tr. 381-83. However, a year after the heart attack, in December 2006, he was hospitalized again for gastrointestinal bleeding due to a gastric ulcer. The ulcer was linked to his use of Plavix, which was discontinued. Tr. 281-82. At a follow-up appointment in March 2007, his cardiac condition was stable, with no angina, and his EKG was essentially normal; he reported only that he "does feel a little tired." Tr. 380.

Less serious is Plaintiff's issue with breathing, apparently linked to smoking, which is reflected in a diagnosis of chronic obstructive pulmonary disease ("COPD"). Tr. 226. His check-ups consistently reflect that his shortness of breath remained stable during the relevant period and was linked as much to deconditioning as to COPD; there is no evidence of extensive pulmonary evaluation. The only treatment of a COPD-related issue occurred in March 2008, when he was seen in the emergency room for acute bronchitis that was causing a severe cough resulting in pain in a rib that he claims was fractured while he was in the Army. ECF No. 16 at 1. However, Plaintiff was discharged the same day with cough medication. Tr. 385. No follow-up treatment or medication for COPD, back or rib pain was recommended. After significant pressure from medical providers, in 2010, Plaintiff stopped smoking. Tr. 167, 200, 400. He is prescribed ventolin to use as needed for COPD. Tr. 455.

Overall, Plaintiff's treatment records, which are primarily from the Veterans Administration ("VA") facility in Providence, Rhode Island, do not evidence any work-related

limitations, except for a ban on strenuous exercise (like shoveling snow).  Id.  Apart from his

complaint that he feels tired, they largely reflect an absence of pain[1] or shortness of breath and

no concerns with activities of daily living or functional issues; to the contrary, they demonstrate

that Plaintiff has the ability to walk up at least one flight of stairs, mow the lawn, work in a small

garden, ride a bike for thirty minutes and walk the dog.  Tr. 183, 190, 200, 214, 231.  His SSI

application added the activities of vacuuming, cleaning, meal preparation and grocery shopping.[2]

Tr. 138-40.  While his health providers observe that Plaintiff had not been working, none has

opined that he cannot work.  See, e.g., Tr. 183 ("[z]ero activity"); 380 ("not getting a whole lot

of exercise and he has not been working").  In the months leading up to the hearing before the

ALJ, both an EKG and a stress test produced normal results.  Tr. 428, 431, 438-40.

After his cardiac status and the related ulcer stabilized in 2006 and 2007 respectively, the

health issues that dominate Plaintiff's medical treatment relate largely to life-style and behavior

– Plaintiff's providers repeatedly advise that his diet, lack of appropriate exercise, use of tobacco

and alcohol consumption all pose serious risk of future health catastrophes, though no provider

has opined that any of them is currently affecting his ability to function.  His medical records

reflect the diagnoses linked to these behaviors: COPD, hyperlipidemia, abnormal liver function

tests, tobacco use disorder and alcohol dependence.  Tr. 226.  The record also reflects that, over

time and despite much resistance, Plaintiff has gradually improved somewhat in that he finally

quit smoking in 2010, pays more attention to nutrition, has tried to cut back on beer drinking and

exercises by walking the dog and riding his bike.  Tr. 141, 191, 195-96, 398, 406, 422.

---

[1] The exceptions are few.  For example, the complaint of rib pain resurfaced at a routine check-up in December 2009, but no follow-up was prescribed.  Tr. 204.  At his next check-up in April 2010, Plaintiff reported no pain.  Tr. 190.

[2] Plaintiff's shopping does not involve driving.  Plaintiff has neither a driver's license nor a car.  Tr. 137-40.  His license was taken following a DUI – he claims he was "framed."  Tr. 40.  Afterwards, he decided that he did not need a license anymore.  Id.

Plaintiff's long-standing alcohol dependence appears to be the most troubling of these problems. His providers have linked it both to his abnormal liver function level and cholesterol results[3] and have repeatedly warned that continued alcohol use could lead to heart attack and stroke resulting in death. Tr. 406. At virtually every appointment with his treating team at the VA, alcohol consumption was discussed. While Plaintiff has generally agreed to try to reduce his beer intake, he has consistently refused to strive for abstinence. Tr. 194, 400, 406. He consistently declined AA, detoxification treatment or counseling. Tr. 194, 422. Over the period covered by the medical records, Plaintiff typically reported to medical providers that he regularly drank between two and ten beers per day, with a peak report of four to twelve per day in September 2009. Tr. 207. In 2009 and 2010, the records reflect his claim that he had cut back significantly so that he was no longer drinking daily, and when he drank, he limited his intake to two to four beers a day. Tr. 185, 196-97. However, in November 2010, his treating physician noted that he "continues to drink heavily;" at the appointment prior to the ALJ hearing, her notes indicate that he told her he was drinking "2-10 beers a day." Tr. 398, 406. She advised that he would require detoxification to stop drinking. Tr. 400-01. Importantly, a mental health evaluation performed in April 2010 reflects that alcohol dependence is Plaintiff's only mental impairment. Tr. 410-22.

As of the hearing, Plaintiff was taking five prescription medications: a blood pressure medication (amlodipine), a second medication for blood pressure and heart issues (metoprolol), a statin to reduce cholesterol (rosuvastatin), ventolin as needed for COPD and nitroglycerin as needed for chest pain, in addition to aspirin, fish oil and a multivitamin. Tr. 404, 455. During the VA appointment with his treating physician immediately prior to the hearing, the potential

---

[3] Plaintiff's abnormal cholesterol laboratory results caused one provider to opine, "I really think he is drinking quite a bit." Tr. 380.

side effects from these medications were discussed but no concerns or changes were noted. Tr. 401. Plaintiff presented no new symptoms with respect to cardiovascular disease and no change in exercise tolerance. Tr. 400. No physical limitations were noted, although the familiar mantra about the extreme risk of continued alcohol consumption was repeated: "advised to quit etoh – discussed would need detox, not motivated at this time." Id. There is a reference to knee complaints,[4] but Plaintiff declined a referral to an orthopedic physician for a baseline evaluation of his knee; no medication or other intervention is reflected. Id. A stress test performed soon after, in July 2011, showed normal cardiac function, confirming that his heart condition remained stable. Tr. 431, 437-38. At the hearing, Plaintiff testified that he takes an over-the-counter analgesic if he feels pain. Tr. 42.

In connection with his pending SSI application, in March 2010, Plaintiff was sent to agency physician, Dr. John McCaffrey, for a consultative examination, as well as to Rhode Island Medical Imaging for a chest x-ray and to Newport Hospital for an EKG. Tr. 164-67. Dr. McCaffrey acknowledged that Plaintiff suffers from shortness of breath, "but this is mainly secondary to being out of shape;" he observed that Plaintiff did not appear to be short of breath after his climb of the stairs to the office for the appointment. Tr. 166. Dr. McCaffrey's findings on physical examination were all normal. Tr. 167. Based on his examination and review of the available medical history, Dr. McCaffrey opined that Plaintiff's cardiac condition appeared to be stable, but that he could not return to his prior work as a carpenter due to the amount of climbing,

---

[4] Plaintiff submitted a letter to the Appeals Council, which states that his knee pain had recently been diagnosed as gout. Tr. 162. No supporting medical records were included. The letter was admitted in the record, but the Appeals Council determined that nothing Plaintiff had submitted justified changing the ALJ's decision. Tr. 5-6, 9. As a medical condition that arose after the ALJ's adverse decision, Plaintiff's new claim that he has developed gout does not relate to the relevant time period and may properly be disregarded. Gullon ex rel. N.A.P.P. v. Astrue, No. 11-099ML, 2011 WL 6748498, at *10 (D.R.I. Nov. 30, 2011) (evidence reflecting a later-acquired potential impairment is not material). In any event, Plaintiff does not raise this as an appeal issue. It will not be discussed further in this report and recommendation.

carrying, stooping and squatting involved.  Id.  The EKG and chest x-ray performed at the same time were both normal.  Tr. 164-65.

Based on Plaintiff's medical history,[5] Dr. McCaffrey's consultative examination and related test results, in April 2010, agency physician Dr. Edward Hanna prepared an assessment of Plaintiff's physical residual functional capacity ("RFC").  Tr. 168-75.  Dr. Hanna concluded that Plaintiff is limited in his ability to lift more than ten pounds though he could occasionally lift twenty pounds, is limited in his ability to stand, walk or sit for more than six hours, and only occasionally is able to climb, stoop, kneel, crouch or crawl, taking his deconditioning into consideration.  Tr. 169-70.  Agency physician Dr. Henry Laurelli performed a second review and concurred in Dr. Hanna's assessment.  Tr. 245.  Apart from Drs. McCafferty, Hanna and Laurelli, there is no opinion evidence in the record regarding Plaintiff's limitations or RFC.

## II.    <u>Travel of the Case</u>

In October 2009, with the assistance of counsel, Plaintiff applied for SSI, claiming that he had become disabled in December 2005.  Tr. 108.  After his application was denied initially and on reconsideration, he sought a hearing before an ALJ.  Tr. 57-59, 66-71.  At the hearing on October 4, 2011, still represented by counsel, Plaintiff testified, as did a vocational expert.  Tr. 29-53.  No medical expert was called, nor did Plaintiff's attorney suggest that one was needed.  On October 28, 2011, the ALJ denied Plaintiff's application for benefits.  Tr. 12-26; <u>see also</u> Tr. 27-54.  On November 20, 2012, the Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 5-9.  Plaintiff filed a timely appeal bringing the matter to this Court.

---

[5] It would appear that the medical records from Plaintiff's hospitalizations, which are now in the record, had not yet been assembled at the time of Dr. Hanna's file review.  Tr. 169 ("no medical records were obtainable for the [2005 or 2006 hospitalizations]").  However, Dr. Hanna relied on Plaintiff's report of those hospitalizations, finding it "believable and [consistent with coronary vascular disease]" so that there was no need for him to review the records.  Tr. 170.

### III.    The ALJ's Hearing and Decision

At the administrative hearing, Plaintiff's counsel argued that he was claiming to be disabled based on the heart attack, his high blood pressure and shortness of breath. She asserted that Plaintiff's alcohol dependence is not material either to COPD or heart disease. Tr. 32.

Plaintiff testified that, based on his physical restraints and "doctor's orders,"[6] he cannot work because he cannot lift more than forty-five pounds, he gets dizzy if he stands up too fast, he is "sleepy," "tired" and "ache[s]," he has trick knees that could give out, he had a broken rib that now aches when he sneezes and he cannot stand for prolonged periods. Tr. 37. He stated he is basically idle during the day, but might do a little gardening or yard work, vacuuming, cooking and shopping; once in a while, he goes out with a working friend to help out with tasks like turning a valve or anchoring a ladder, but does not do strenuous work himself and is not paid. Tr. 36, 39, 43-44. He watches television, reads the newspaper and an occasional magazine, and does crossword and Sudoku puzzles. Tr. 40. While knee and back pain affects his ability to sit "[n]ow and then," he has never been treated for either and uses only over-the-counter medication. Tr. 41-42. He believes that his medications make him tired and interfere with sleep. Tr. 38, 42. During his testimony, he insisted that he drinks no more than two beers a day and that the contemporaneous VA reference to two to ten beers a day was an error by a nurse, although he conceded the same notation is accurate in reflecting that his treating physician advised that he would require detoxification to achieve sobriety. Tr. 46-47. He downplayed the seriousness of this advice, testifying that he told his doctor that he would not stop his one beer per day and that she said that would be "okay." Tr. 48.

---

[6] While the ALJ did not specifically focus on this testimony in making his credibility finding, it must be noted that the record is devoid of any evidence that any doctor ever advised Plaintiff that he should not work during the relevant time period.

The other witness at the hearing was Edmund Colandra, the vocational expert. Consistent with Dr. Hanna's RFC assessment, the ALJ posed a hypothetical that asked Mr. Colandra to assume:

> [A] hypothetical Claimant . . . with a residual functional capacity for work generally at the light exertional level limited by inability to climb or work on ladders, ropes, scaffolding. Not more than occasional climbing of ramps or stairs, stooping, kneeling, crouching, or crawling. [He] would not be able to work where he would be exposed to cold temperature extremes or where he would be exposed to unprotected heights, dangerous moving machinery, or driving automotive equipment on the job.

Tr. 49. Mr. Colandra testified that such an individual would not be able to do Plaintiff's past work as a carpenter, but should be able to do various semi-skilled occupations such as quality control inspector and sales clerk (in hardware stores and tool departments of larger stores), to which his prior skills could transfer, as well as unskilled occupations such as small parts assembler, cashier and mail clerk. Tr. 50-51. In addition, for the period prior to Plaintiff's fiftieth birthday, he could perform the occupations of security surveillance monitor, bench hand and jewelry stringer. Tr. 52.

In his decision, at Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least September 15, 2009, the date he protectively filed his application. Tr. 17. At Step Two, the ALJ examined all of the medical evidence beginning with the heart attack in 2005 and found that Plaintiff has the severe impairment of coronary artery disease status post a myocardial infarction, but that, at Step Three, it does not meet or equal the criteria for any cardiovascular listing. Tr. 17-19. At Step Four, mindful that Plaintiff's cardiac condition had been stable since 2006, and that no other severe impairment affects his RFC, the ALJ made an RFC finding that is consistent with both Dr. Hanna's RFC assessment and Dr. McCafferty's examination report:

[Plaintiff] has had the residual functional capacity to perform light work as
defined in 20 CFR 416.967(b) except for the nonexertional limitations of inability
to climb ropes/ladders/scaffolds, of inability to engage in climbing of
stairs/ramps, balancing, stooping, crouching or crawling and of the need to avoid
exposure to cold or work-place hazards (20 CFR 416.945 and SSR 96-8p).

Tr. 19-21. Based on this RFC finding, the ALJ found that Plaintiff cannot do his past work as a

carpenter. Tr. 21. At Step Five, in reliance on the testimony of the vocational expert, the ALJ

found that Plaintiff can do a significant number of semi-skilled jobs as a quality control inspector

and a sales clerk for a tools/hardware business and a significant number of unskilled jobs as a

small parts assembler, cashier and mail clerk. Tr. 22-23 n.7. Accordingly, the ALJ found that

Plaintiff has not established that he has been under a disability for the period from the date of

filing (September 15, 2009) through the date of the decision. Tr. 23.

## IV.    Issues Presented

Plaintiff presents three arguments, which he contends establish that the decision of the

Commissioner that he is not disabled within the meaning of the Act is not supported by

substantial evidence in the record and is infected by legal error:

1. The ALJ erred by not properly considering the full extent of Plaintiff's medical
   problems, including his knees, irregular heartbeat, tendency to tire easily and get
   winded fast, the side effects of medications and the limitations he testified to at
   the hearing.

2. The ALJ erred by not taking testimony at the administrative hearing from a
   medical expert able to testify about the side effects of medications, knee pain,
   back pain from an old rib fracture and other ailments.

3. At the hearing, the ALJ focused inappropriately on Plaintiff's failure to file tax returns or to pay social security taxes, as well as on the discrepancy between the medical record and his testimony regarding the amount that he drinks daily.

## V.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not

the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 416.929(a).

The Court must reverse the ALJ's decision on plenary review, if the ALJ applies incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to determine that the law was applied properly. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g); under Sentence Six of 42 U.S.C. § 405(g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996).

To remand under Sentence Four, the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Seavey, 276 F.3d at 9; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled). Where the Court cannot discern the basis for the Commissioner's decision, a Sentence Four remand may be appropriate to allow an explanation of the basis for the decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under Sentence Four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)

(necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a Sentence Four remand, the Court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, Sentence Six of 42 U.S.C. § 405(g) provides:

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under Sentence Six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139-43 (1st Cir. 1987).

A Sentence Six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095 (citing Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991)). Essential to the materiality requirement is that the new evidence relate to the time period for which benefits were denied; evidence reflecting a later-acquired disability or the subsequent deterioration of a previous non-disabling condition is not material. Gullon ex rel. N.A.P.P. v. Astrue, No. 11-099ML, 2011 WL 6748498, at *10 (D.R.I. Nov. 30, 2011) (quoting Beliveau ex rel. Beliveau v. Apfel, 154 F. Supp. 2d 89, 95 (D. Mass. 2001) ("To be material, the evidence must be both relevant to the claimant's condition during the time period for which benefits were denied and probative.")). The plaintiff bears the burden of demonstrating that a piece of new evidence is material. See Evangelista, 826 F.2d at 139. With a Sentence Six remand, the parties must return to the Court after remand to file modified findings of fact. Jackson, 99 F.3d at 1095 (citing Melkonyan v. Sullivan, 501 U.S.

89, 98 (1991)). The Court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. Id.

## VI.  **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. §416.905. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.905-911.

### A.  **Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 416.927(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 416.927(c)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where

ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 416.927(d). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. § 416.945-946), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 416.927(d); see also Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

### B.    Developing the Record

Social Security proceedings are "inquisitorial rather than adversarial." Sims v. Apfel, 530 U.S. 103, 110-11 (2000); Miranda v. Sec'y of Health, Educ. & Welfare, 514 F.2d 996, 998 (1st Cir. 1975) (social security proceedings "are not strictly adversarial."). The ALJ and the Appeals Council each have the duty to investigate the facts and develop the arguments both for and against granting benefits. Sims, 530 U.S. at 110-11. The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Evangelista, 826 F.2d at 142. Courts in this Circuit have made few bones about the responsibility that the Commissioner bears for adequate development of the record. Id.; see Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 80-81 (1st Cir. 1982); Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.  Medical Tests and Examinations

The ALJ is required to order additional medical tests and examinations only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; <u>see also</u> <u>Conley v. Bowen</u>, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling this duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  <u>Carrillo Marin v. Sec'y of Health & Human Servs.</u>, 758 F.2d 14, 17 (1st Cir. 1985).

### D.  The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  <u>See</u> 20 C.F.R. § 416.920.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 416.920(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  <u>Id.</u> § 416.920(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  <u>Id.</u> § 416.920(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  <u>Id.</u> § 416.920(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  <u>Id.</u> § 416.920(g).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

### E.      Capacity to Perform Other Work

Once the ALJ finds that a claimant cannot return to the prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the local or national economy.  Seavey, 276 F.3d at 5.  To meet this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  The Commissioner's burden can be met through the use of a vocational expert.  Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991).  The ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given RFC indicated by the exertional limitations. Merola v. Astrue, C.A. No. 11-536A, 2012 WL 4482364, at *5 (D.R.I. Sept. 26, 2012).

### F.      Making Credibility Determinations

When an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons, or the record must be obvious as to the credibility finding.  See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg, 26 F. Supp. 2d at 309-10.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**G.    Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 416.928.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> 4. Treatment, other than medication, for relief of pain;

5. Functional restrictions; and

6. The claimant's daily activities.

Avery, 797 F.2d at 29; Gullon v. Astrue, No. 11-cv-099ML, 2011 WL 6748498, at *5-6 (D.R.I. Nov. 30, 2011). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). Guidance in assessing the credibility of the claimant's statement is provided by the Commissioner's 1996 ruling. SSR 96-7p, 1996 WL 374186 (July 2, 1996). Credibility of an individual's statement about pain or other symptoms and their functional effects is the degree to which the statement can be believed and accepted as true; in making this determination, the ALJ must consider the entire case record and may find that all, only some, or none of an individual's allegations are credible. Id. at *4. One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the record. Id. at *5-6.

**H.     Substance Abuse**

In 1996, Congress amended the Act to deny disability benefits if alcohol or drug abuse comprises a contributing factor "material" to the determination of disability. 42 U.S.C. § 423(d)(2)(C); Brown, 71 F. Supp. 2d at 29; 20 C.F.R. § 416.935(b). If the claimant is under a disability and there is medical evidence of alcoholism or substance addiction, the ALJ must determine the impact of the addiction on the claimant's disability. See 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935(a). "The 'key factor' to be considered, in fact the only factor mentioned in the regulations, is whether the claimant would still be disabled absent the drug addiction or alcoholism." Brown, 71 F. Supp. 2d at 35; see also 20 C.F.R. § 416.935(b)(1). Effective on March 22, 2013, a new policy interpretation issued, which clarifies how the Commissioner

determines whether drug addiction and alcoholism is material to the finding that a claimant is disabled. SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013).

The ALJ must first conduct the five-step inquiry taking into account all impairments, including drug and alcohol addiction. Brown, 71 F. Supp. 2d at 35. If the ALJ finds the claimant is not disabled, the process ends. SSR 13-2p, 2013 WL 621536, at *10; Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003); Williams v. Barnhart, 338 F. Supp. 2d 849, 862 (M.D. Tenn. 2004). If the ALJ finds the claimant disabled, the analysis "must go one step further" and determine whether the claimant would still be disabled if the claimant stopped abusing drugs or alcohol. Brown, 71 F. Supp. 2d at 35. Congress mandated the extra step because "it is important . . . not to have the Social Security System subsidize [substance abuse]." Id. at 29. An impairment caused by past substance abuse may be considered disabling only if the impairment remains after the claimant stops substance abuse. Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000); Harmison v. Halter, 169 F. Supp. 2d 1066, 1070 (D. Minn. 2001).

## VII.     Application and Analysis

### A.     The ALJ's Assessment of Plaintiff's Overall Medical Condition

Plaintiff contends that the ALJ erred by failing properly to consider the seriousness of his many medical problems, including his knees and back, his irregular heartbeat on the day of his heart attack, his tendency to tire easily and get winded fast, the side effects of his medications and the limitations to which he testified at the hearing.

This argument rests on a foundation of sand. The ALJ carefully questioned Plaintiff about his back and knees, confirming the complete absence of any diagnostic work-up or treatment; his decision references the record, which reveals that Plaintiff affirmatively declined a referral to get an evaluation of his knees. Tr. 19 n.3, 21, 41. The ALJ also carefully considered

the medical evidence of Plaintiff's irregular heartbeat on the day of his heart attack, December 9, 2005, and found that the heart condition constitutes a severe impairment; however, the decision also focuses on Plaintiff's stabilized cardiac status since the heart attack and reflects the ALJ's thorough review of the subsequent, largely normal, tests of Plaintiff's heart function. Tr. 17-19. Similarly, the decision specifically states that the ALJ carefully considered Plaintiff's claims about the side effects of medications, fatigue, dizziness, shortness of breath, and pain in his knees, back and rib, together with the medical records reflecting the seriousness (or not) of those complaints. Tr. 20-21.

In evaluating Plaintiff's claim of pain, the ALJ properly relied on <u>Avery</u> factors, including Plaintiff's testimony, corroborated by the medical record, that he relied only on over-the-counter medications to address it. Tr. 18, 21. Relatedly, the ALJ properly considered the evidence in the medical record and in Plaintiff's application of his relatively unimpaired ability to engage in basic activities of daily living, like taking care of personal needs, yard work, meal preparation, housework, shopping, and use of public transportation. Tr. 21.

In finding that Plaintiff could perform the work activities generally required by light work, with some additional limitations, the ALJ relied not only on this evidence, but also on the unanimous opinions of Dr. McCafferty, who physically examined Plaintiff, and Drs. Hanna and Laurelli, who opined based on their reviews of the file. <u>See</u> 20 C.F.R. § 416.927(e) (expert opinions of such medical reviewers may amount to substantial evidence). Plaintiff might have argued (but did not) that the ALJ erred by relying on medical sources whose conclusions were formed in March through July 2010, over a year prior to the ALJ's hearing on October 4, 2011. Such an argument would not be availing. Additional medical records not available to the medical reviewers were submitted through the date of the hearing but they contain no evidence

of a sustained (never mind material) worsening in Plaintiff's condition; to the contrary, the new records establish that none of Plaintiff's symptoms had changed, particularly his critical cardiac function, which remained essentially normal. Tr. 394-454. With a dearth of medical evidence suggesting any "significant worsening" in Plaintiff's condition, the ALJ committed no error in relying on medical opinions procured over a year prior to making his decision. Abubakar v. Astrue, No. 1:11-cv-10456-DJC, 2012 WL 957623, at *12 (D. Mass. Mar. 21, 2012) (citing Ferland v. Astrue, No. 11-cv-123-SM, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011)).

Plaintiff has not presented any inconsistent medical opinions. The record lacks even a scintilla of evidence from a medical source tending to establish any limits beyond those limned by the opinions of Drs. McCafferty, Hanna and Laurelli. Under such circumstances, the ALJ's determination as to impact of Plaintiff's health problems on his ability to work is well supported by the substantial evidence and must be affirmed. Rodriguez Pagan, 819 F.2d at 3. Further, in light of the ALJ's determination that Plaintiff was not disabled during the relevant period, there was no need to determine whether Plaintiff's alcohol dependence was material to any of his alleged impairments. SSR 13-2p, 2013 WL 621536, at *10.

### B.    ALJ's Failure to Call Medical Expert at Hearing

Plaintiff argues that the ALJ erred by not calling a medical expert to testify at the hearing; he contends that, because of this failure, there was no one at the hearing to discuss his medications, illnesses and injuries.

There is no question that the regulations provide that "[a]dministrative law judges *may* also ask for and consider opinions from medical experts." 20 C.F.R. § 416.927(e)(2)(iii) (emphasis added). Nevertheless, "[u]se of a medical advisor in appropriate cases is a matter left to the [Commissioner's] discretion; nothing in the Act or regulations requires it." Rodriguez

Pagan, 819 F.2d at 5; see also Bianco v. Astrue, No. C.A. 09-021S, 2010 WL 2382855, at *10-11

(D.R.I. Apr. 20, 2010) (ALJ does not have to retain an expert to scrutinize every piece of

evidence that does not happen to have been considered by a physician).  Here, the Commissioner

had already purchased a consultative examination from Dr. McCafferty and an RFC assessment

from Dr. Hanna, as well as a file review from Dr. Laurelli.  Because these medical experts

considered all of the evidence necessary to assess the extent of Plaintiff's functional limitations,

additional testimony from a medical expert was not necessary.  I find no error either in the ALJ's

reliance on the uncontradicted opinions of the state agency medical sources or in his

determination that the additional expense of a medical expert at the hearing was unnecessary.

Accordingly, there is no need to consider whether Plaintiff's failure to ask for a medical expert at

the hearing (at which he was represented by counsel) constitutes a waiver of this argument.

### C.    ALJ's Credibility Assessment

Plaintiff apparently challenges the ALJ's assessment of his credibility,[7] specifically

objecting to what he contends was inappropriate focus on his failure to file tax returns or to pay

social security taxes and on the discrepancy between the medical record and his testimony

regarding the amount that he drinks daily.  I address them separately.

The ALJ questioned Plaintiff carefully about the inconsistency between his claim that he

worked full-time as a self-employed carpenter and his failure to file any tax returns for thirteen

years, from 1992 until 2005, with the exception of 2002, when he reported income of $20,028.

Tr. 34-35.  Noting that self-employed workers like Plaintiff must pay Social Security taxes, and

---

[7] In his brief, Plaintiff does not frame his challenge as an attack on the ALJ's credibility finding; he simply objects to the ALJ's focus on his lack of reported income and his drinking.  Because the only role these matters played in the ALJ's decision relates to credibility, I accept the argument as focused there, mindful that by the time he was preparing this appeal, Plaintiff was pro se.  See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (pro se plaintiff's filings to be construed liberally).

therefore must file tax returns, on "even the most minimal income," the ALJ found Plaintiff's testimony that the IRS told him not to file so unlikely as to reflect adversely on Plaintiff's credibility.  Tr. 20 n.6.

There is no error in this finding.  The ALJ is right that the income threshold above which a self-employed tax payer must file is minimal: over the period from 1992 through 2005, it has been set at $400.[8]  Buttressing the ALJ's finding is Plaintiff's reported income for the prior period (from 1980 until 1991), which was consistently more than $400, in most years substantially more.  Importantly, this adverse credibility finding was not sprung on Plaintiff in the decision.  The ALJ's skepticism regarding his testimony about why he did not file was clearly expressed to Plaintiff and his attorney at the hearing, yet nothing to clarify or correct was submitted.  Tr. 35.  In all, the ALJ's reliance on this testimony as part of the foundation for the adverse credibility finding is appropriate and not based on error.  Frustaglia, 829 F.2d at 195; Cisneros v. Astrue, No. CV 10-4940-PJW, 2011 WL 4477279, at *5 (C.D. Cal. Sept. 26, 2011) (plaintiff's failure to report income to IRS is valid reason for questioning his credibility) (citing Berger v. Astrue, 516 F.3d 539, 546 (7th Cir. 2008) (claimant's failure to report income on tax returns supported ALJ's adverse credibility determination)).

Plaintiff also complains of the ALJ's focus on the discrepancy between the medical record and his testimony regarding the amount that he drinks daily.  In his decision, the ALJ marshals this discrepancy, together with Plaintiff's unwillingness to testify about his DUI and his testimony minimizing that he has a problem with alcohol, to support the conclusion that his testimony "reflects adversely on [Plaintiff's] overall credibility."  Tr. 18 n.1.  I find no error in this determination.  As with the income discrepancy, the ALJ's explicit questioning of Plaintiff

---

[8] See 26 C.F.R. § 1.1402(b)-1(c).

placed him and his attorney on notice that Plaintiff's credibility was under scrutiny. Further, there is no legal error in reliance on Plaintiff's less-than-candid testimony about his dependence on alcohol to support an adverse credibility finding. See Valiquette v. Astrue, 498 F. Supp. 2d 424, 431 (D. Mass. 2007) (testimony regarding alcohol abuse and loss of driver's license due to a DUI contained inconsistencies undermining credibility).

It is important to note that these two troubling credibility problems are not the only supports for the ALJ's adverse credibility finding.[9] The ALJ also noted the discrepancy between Plaintiff's complaint that his knee pain was disabling and the medical report reflecting that he declined to get his knee evaluated when his treating physician suggested it. Tr. 19 n.3. In addition, the ALJ focused on the discrepancies between the activities of daily living described in the medical record and those described in his application and his testimony; the ALJ found that his testimony in particular reflected activities that are "less" than the activities described either in the medical record or the application. Tr. 21. For example, in his application, Plaintiff wrote that he used to ride a bike but gave it up because of his disabilities. Tr. 141. Yet in July 2009, he told his treating physician at the VA that he was riding a bike for thirty minutes daily without either shortness of breath or chest pain. Tr. 214.

Overall, the ALJ properly evaluated the credibility of Plaintiff's claim that he suffers from disabling symptoms based on a detailed consideration of the relevant evidence in the record. Tr. 20-21. In doing so, the ALJ took into account Plaintiff's activities and statements, the medical sources who opined that Plaintiff could work (with appropriate limitations), the lack

---

[9] Plaintiff's application contains a glaring credibility issue of which the ALJ apparently was unaware: in his October 23, 2009, filing, Plaintiff affirmed under penalty of perjury that "[t]he following statements describe my fugitive felon/parole or probation violator status as of September 15, 2009 . . . . I have not been accused or convicted of a felony or an attempt to commit a felony [and] I am not on parole or probation under Federal or State law." Tr. 109. This representation appears to be false – Plaintiff was convicted in 2002 of solicitation to commit murder and arson and sentenced to ten years, with two years to serve followed by eight years on probation. State v. Crow, 871 A.2d 930, 932 (R.I. 2005). This inconsistency corroborates the ALJ's credibility finding.

of convincing support for the greater limitations that he claimed and the inconsistencies in his testimony. Id.; see also Tr. 17-18. The factors considered by the ALJ in assessing (and rejecting) the credibility of Plaintiff's claims of disabling pain and other limitations were generally appropriate and sufficient. 20 C.F.R. § 416.929(a); see Sousa v. Astrue, 783 F. Supp. 2d 226, 235 (D. Mass. 2011) (where substantial evidence supports omission of certain limitations from RFC, such limitations properly excluded from hypothetical presented to vocational expert).

## VIII.  Conclusion

Based on the foregoing, Plaintiff's Motion for Reversal (ECF No. 16) is DENIED and the Commissioner's Motion for Order Affirming the Decision of the Commissioner (ECF No. 17) is GRANTED.

A separate and final judgment shall enter.


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 12, 2014